UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

In re:

AVANTAIR, INC.,

       Debtor.

Case No. 13-09719-CPM

Chapter 7

_____/

## SETTLEMENT AGREEMENT

    This Settlement Agreement is entered into this 2nd day of October, 2013, by and between the parties listed on Exhibit "A" hereto (the "Settling Owners"), who collectively constitute 93.75% of the fractional owners of the airframe, engines, and propellers identified on Exhibit "B" hereto, and the parts or equipment installed or affixed thereto (collectively, the "Aircraft"), and Beth Ann Scharrer (the "Trustee") (the Trustee and Settling Owners are, collectively, the "Parties"), the Chapter 7 Trustee of the bankruptcy estate of Avantair, Inc. (the "Debtor").

    WHEREAS, the Settling Owners are the owners of fractional interests in the Aircraft, in the percentages set forth on Exhibit "A" hereto;

    WHEREAS, in addition to the Settling Owners, certain other persons or entities may be the owners of fractional interests in the Aircraft in the percentages set forth on Exhibit "C" hereto (collectively, the "Non-Settling Owners")(the Settling Owners and the Non-Settling Owners are, collectively, the "Fractional Owners");



EXHIBIT
A

WHEREAS, the Trustee asserts that the bankruptcy estate of the Debtor has an interest in the Aircraft by virtue of, among other things: (a) various parts and equipment installed by the Debtor on the Aircraft prior to the Debtor's bankruptcy; (b) the Debtor's rights to use the Aircraft in the conduct of its business under the terms of the Dry Lease Exchange Agreements entered into by and between the Fractional Owners and the Debtor; and (c) the possession and preservation of the Aircraft and the logbooks and maintenance records relating thereto (collectively, the "Trustee's Claims");

WHEREAS, the Settling Owners and the Trustee have agreed to resolve the Trustee's Claims in and to the Aircraft on the terms set forth herein.

NOW, THEREFORE, in consideration of the mutual covenants set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Parties agree as follows:

1. The Trustee has an interest in the Aircraft, which interest constitutes property of the Debtor's estate within the meaning of 11 U.S.C. Section 541, to the extent provided in paragraph 4(d) below.

2. Partition of the Aircraft among the Debtor's bankruptcy estate and the Fractional Owners is impracticable, and sale of the estate's undivided interest in the Aircraft separate and apart from the interests of the Fractional Owners will realize significantly less for both the estate and the Fractional Owners than the sale of the Aircraft as a whole on the terms set forth herein.

3. On or before October 4, 2013, the Trustee shall file with the Bankruptcy Court:

   a. A motion pursuant to Bankruptcy Rule 9019 seeking approval of this Agreement;

b. A complaint to determine extent, validity, and priority of liens claims and interest in the Aircraft (the "Adversary Proceeding"), which shall name all of the parties listed on Exhibit "D" hereto as defendants;

c. A response to the _____, 2013 Order to Show Cause issued by the court in connection with the action entitled *Teterboro Rams, Inc. v. Advantage Capital Management Co., et al* (Docket No. BER-L-5855-13) presently pending in the Superior Court of New Jersey, Bergen County; and

d. A motion to approve sale free and clear of liens and sale and bid procedures relating to the Aircraft, in substantially the form attached hereto as Exhibit "E" ("the Sale Motion").

4. The Net Proceeds (as hereinafter defined) from the sale of the Aircraft shall be distributed as follows:

a. First, in payment of any valid liens against the Aircraft, in the amounts as shall have been determined by the Bankruptcy Court in the Adversary Proceeding;

b. Second, in repayment of any expenses paid by any Fractional Owner (including but not limited to the Settling Owners) for insurance, storage, maintenance, or repairs to the Aircraft deemed necessary by the majority of the co-owners prior to sale which may include obtaining airworthy status;

c. Third, $1,300.00 U.S (less any payments previously made by or on behalf of the Fractional Owners of the Aircraft to Van Allen for records organization relating to the Aircraft;

d.  Fourth, in consideration of the Trustee's Claims and the Debtor's interest in the Aircraft, the sum of $50,000.00, plus 8% of the Net Proceeds in excess of $1,000,000.00; and

e.  Fifth, the balance shall be divided among all Fractional Owners based upon their respective ownership interests in the Aircraft (as determined by the Bankruptcy Court in the Adversary Proceeding or agreed to by all of the Fractional Owners in writing).

As used in this paragraph, the term "Net Proceeds" shall mean the gross proceeds of sale less any ordinary and customary actual costs or expenses to be paid by the seller. This Agreement is intended to resolve only the Trustee's Claims *in rem* in and to the Aircraft, and is without prejudice to any claims for damages by and between the Debtor, the Debtor's estate, or the Trustee and the Fractional Owners.

5.  It is an express condition precedent to the Parties' obligations hereunder that the Bankruptcy Court authorize and approve this Settlement Agreement in the Debtor's bankruptcy case. The parties will request a waiver of the 14-day stay provided by Rule 6004(h) of the Federal Rules of Bankruptcy Procedure.

6.  Each of the Parties represent that they have relied upon or had the opportunity to consult with any professionals, accountants, and attorneys of their choice, that the terms of this Settlement Agreement have been completely read, and that those terms are fully understood and voluntarily accepted.

7.  The Parties agree that any rule of construction to the effect that ambiguities are to be resolved against the drafting party shall not apply to the interpretation of this Settlement Agreement.

8.  This Settlement Agreement constitutes the entire agreement and understanding between the Parties relating to the subject matter herein, and this Settlement Agreement may not be altered, amended, or modified in any respect or manner whatsoever, except by a writing duly executed by the Trustee and the Settling Owners.

9.  Each Party hereto shall bear its own attorneys' fees and costs arising from the terms of this Settlement Agreement, the matters and documents referenced herein and all related matters.  However, in the event it shall become necessary for any party to take action of any type whatsoever to enforce the terms of this Settlement Agreement, the prevailing party shall be entitled to recover all attorneys' fees, costs and expenses, including all out-of-pocket expenses that are not taxable as costs, incurred in connection with any such action including any negotiations, mediations, litigation, bankruptcy or appeals, or any action brought to collect such attorneys' fees incurred.

10. This Settlement Agreement and the validity, performance, and enforcement hereof, shall be interpreted and construed in accordance with the laws of the State of Florida, without giving effect to the conflict of law provisions thereof.  The Parties agree that any suit, action, or proceeding which concerns this Settlement Agreement, the validity, performance and/or enforcement of any terms hereof, shall be brought in the United States Bankruptcy Court for the Middle District of Florida, Tampa Division in connection with this Bankruptcy case.  The Parties hereby consent to the exclusive and continuing jurisdiction of such court (and of the appropriate appellate courts) in any such suit, action or proceeding regarding enforcement or interpretation of this Settlement Agreement and waive any objection to personal jurisdiction or venue laid therein.

11. This Settlement Agreement may be executed in any number of counterparts and/or separate signature pages, all of which, for all purposes, constitute and be fully effective as one agreement. All such counterparts and/or separate signature pages shall constitute one and the same instrument and be considered an original agreement, binding on the Parties hereto, notwithstanding that all parties may not be a signatory to the same counterpart. An executed facsimile copy of this Settlement Agreement or any counterparts thereto, including addenda or exhibits thereto, shall be binding for all purposes.

12. No termination, revocation, waiver, modification, amendment or supplement to this Settlement Agreement shall be binding unless in writing and signed by the party to be charged therewith. No waiver or breach of this Settlement Agreement shall be construed as a continuing waiver or consent to any subsequent breach thereof.

13. In the event that any provision of this Settlement Agreement is held to be wholly or partially invalid, the remaining provisions shall be deemed to be in full force and effect as if this Agreement had been executed by all parties without the invalid provisions.

14. All Parties hereto have entered into this Settlement Agreement voluntarily and of their own free will and without any undue influence, incapacity or otherwise.

IN WITNESS WHEREOF, and intending to be legally bound thereby, the undersigned

have executed the foregoing Agreement effective as of the day and year set forth above.


Advantage Capital Management Company
BFJ, LLC
Friends in Flight, LLC
Gray-Blue Partners, LLC
International Risk Management Institute, Inc.
JC Benedict, LLC
JD Fields & Co.
David Katz
Robert Kennedy
Kinsella Aviation, LLC
MC Aviation, LLC
Mather Air, LLC
Next Step Aviation, LLC
S.V. Air, LLC
TIC Investment Company

By: _____PETER PALMEDO_____

Name: Peter Palmedo
Title: As Attorney-In-Fact for Advantage Capital Management Company, BFJ, LLC, Friends in
Flight, LLC, Gray-Blue Partners, LLC, International Risk Management Institute, Inc., JC
Benedict, LLC, JD Fields & Co., David Katz, Robert Kennedy, Kinsella Aviation, LLC, MC
Aviation, LLC, Mather Air, LLC, Next Step Aviation, LLC, and TIC Investment Company


S.V. Air, LLC
By: _____
Name: Peter Palmedo
Title: Member


Beth Ann Scharrer, as Chapter 7 Trustee for the bankruptcy estate of Avantair, Inc.

By: _____
Title: Trustee

IN WITNESS WHEREOF, and intending to be legally bound thereby, the undersigned have executed the foregoing Agreement effective as of the day and year set forth above.

Advantage Capital Management Company
BFJ, LLC
Friends in Flight, LLC
Gray-Blue Partners, LLC
International Risk Management Institute, Inc.
JC Benedict, LLC
JD Fields & Co.
David Katz
Robert Kennedy
Kinsella Aviation, LLC
MC Aviation, LLC
Mather Air, LLC
Next Step Aviation, LLC
S.V. Air, LLC
TIC Investment Company

By: _PETER PALMEDO_

Name: Peter Palmedo
Title: As Attorney-In-Fact for Advantage Capital Management Company, BFJ, LLC, Friends in Flight, LLC, Gray-Blue Partners, LLC, International Risk Management Institute, Inc., JC Benedict, LLC, JD Fields & Co., David Katz, Robert Kennedy, Kinsella Aviation, LLC, MC Aviation, LLC, Mather Air, LLC, Next Step Aviation, LLC, and TIC Investment Company

S.V. Air, LLC

By: _____
Name: Peter Palmedo
Title: Member

Beth Ann Scharrer, as Chapter 7 Trustee for the bankruptcy estate of Avantair, Inc.

By: _Beth Ann Scharrer, Trustee_
Title: Trustee

# EXHIBIT "A"
## Settling Owners

| Owning Entity | Percent Ownership |
|---|---|
| Advantage Capital Management Company | 6.25% |
| Friends in Flight, LLC | 12.5% |
| Gray-Blue Partners, LLC | 6.25% |
| International Risk Management Institute, Inc. | 6.25% |
| JC Benedict, LLC | 6.25% |
| JD Fields & Co.* | 6.25% |
| David Katz | 6.25% |
| Robert Kennedy | 6.25% |
| Kinsella Aviation, LLC | 6.25% |
| MC Aviation, LLC | 6.25% |
| Mather Air, LLC | 6.25% |
| Next Step Aviation, LLC | 6.25% |
| S.V. Air, LLC | 6.25% |
| TIC Investment Company | 6.25% |
| BFJ, LLC | 6.25% |
| **Total Settling Owners** | **100.00%** |

*CPC Operating, LLC is currently listed on the AC Form 8050-1 filed with the Federal Aviation Administration on March 14, 2012. CPC Operating, LLC has confirmed that it sold its 6.25% undivided fractional interest in N169SL back to Avantair, Inc.  JD Fields & Co. purchased an undivided interest in the Aircraft from Avantair, Inc. and is not currently listed on the AC Form 8050-1 on file with the Federal Aviation Administration.

## EXHIBIT "B"
## Aircraft Description

| | |
|---|---|
| **Aircraft Make and Model:** | Piaggio Avanti P-180 |
| **Registration Number:** | N169SL |
| **Manufactured:** | 2007 |
| **Manufacturer's Serial No.:** | 1140 |
| | |
| **Engines\*:** | LH: PCE- RW0005 |
| | RH: PCE- RW0006 |
| | |
| | |
| **Propellers\*:** | LH: KU089 |
| | RH: HF226 |

\* The original engines and propellers may not be currently affixed to the airframe. It has been confirmed that the engines currently attached to the airframe belong to Banc of America and are on lease to Dallas Airmotive, Inc. and were subleased to Avantair, Inc. prior to a default by Avantair, Inc. Reasonably prior to the deadline for submitting Qualified Bids pursuant to Section 8a of the Sale Motion,  the original engines and propellers will be located and arrangements made to cause them to be attached to the airframe.

## EXHIBIT "C"
## Non-Settling Owners

| Owning Entity | Percent Ownership |
|---|---|
| **Total Non-Settling Owners** | **0%** |

**EXHIBIT "D"**
**Defendants to Adversary Proceeding**

Landmark Aviation
14600 N. Airport Drive
Scottsdale, AZ 85260

Piedmont Hawthorne Aviation, LLC
1500 City West Blvd., Ste. 600
Houston, TX 77042

Big Sky Aviation, Inc.
7020 Georgia Avenue
West Palm Beach, FL, 33405

Teterboro Rams LLC
233 Industrial Ave., Hangar 3
Teterboro, NJ 07608

Access Aviation Maintenance Services, Inc.
3028 Peacekeeper Way
McClellan, CA  95652

## EXHIBIT "E"

### UNITED STATES BANKRUPTCY COURT
### MIDDLE DISTRICT OF FLORIDA
### TAMPA DIVISION

In re:

                                              **Case No. 13-09719-CPM**

**AVANTAIR, INC.,**                            **Chapter 7 case**

      Debtor.

_____/

## MOTION TO APPROVE SALE FREE AND CLEAR OF LIENS AND TO APPROVE SALE AND BID PROCEDURES N169SL

Beth Ann Scharrer, Chapter 7 Trustee (the "Trustee"), by and through her undersigned attorney, pursuant to 11 U.S.C. §§ 105 and 363, Rules 2002, 6004 and 6006 of the Federal Rules of Bankruptcy Procedure and other applicable law, hereby files her Motion to Approve Sale Free and Clear of Liens and to Approve Sale and Bid Procedures (N169SL) ("Motion"), and says:

### I.     PRELIMINARY STATEMENT

1.     On or about July 25, 2013, an involuntary Petition under Chapter 7 of the United States Bankruptcy Code in the United States Bankruptcy Court of the Middle District of Florida, Tampa Division was filed against Avantair, Inc. (the "Debtor").

2.     Beth Ann Scharrer was appointed interim Trustee and is now duly qualified and acting as the Chapter 7 Trustee.

3.     The Trustee and certain co-owners of the Piaggio P-180 aircraft bearing FAA registration number N169SL entered into a settlement agreement (the "Settlement Agreement") establishing the Estate's interest in the airframe, engines, and propellers identified on Exhibit "C" hereto, and the parts or equipment installed or affixed thereto (collectively, the "Aircraft").

4.     The Trustee and Settling Co-owners of the Aircraft have mutually agreed, in their best business judgment, that the bidding procedures proposed herein is the best way to maximize the value for the benefit of the Debtor's Estate, its creditors, and the co-owners of the Aircraft.

## II.     JURISDICTION AND VENUE

5.     This Court has jurisdiction pursuant to 28 U.S.C.§§ 157 and 1334. The Venue is proper in this District pursuant to 28 U.S.C.§§ 1408 and 1409.

## III.     AIRCRAFT TO BE SOLD

6.     The Aircraft which this Motion seeks to sell is the Aircraft described on Exhibit "C".

7.     This Motion requests the authority to approve procedures for the bidding and ultimate sale of the Aircraft.

## IV.     SALE PROCEDURES

8.     The Trustee proposes the following procedures (the "Sale Procedures"):

a.     **Qualified Bids**. To constitute a Qualified Bid, a bidder must deliver, on or before the Bid Due Date to the Trustee's counsel: (i) a $100,000 U.S. deposit, payable by wire transfer to the Adams and Reese LLP Trust Account; (ii) a duly executed purchase agreement in the form attached hereto as Exhibit "B"; and (iii) a signed financing commitment or other evidence establishing, to the reasonable satisfaction of the Trustee, the bidder's financial ability to close on the purchase and sale, free of any contingency. The deadline to submit a Qualified Bid ("Bid Due Date") is 45 days after the later of (i) entry of an order approving this Motion, or (ii) the date on which the Trustee files a notice that the original engines and propellers for the Aircraft have been located and that arrangements have been made to cause said engines and propellers to

be attached to the airframe. A Bid will not constitute a Qualified Bid if it is subject to a due diligence, financing, or other contingency.

b. **Deposit**. The Deposit required shall be payable by wire transfer to Adams and Reese LLP Trust Account, upon submission of a Qualified Bid. The Deposit will be applied as a credit against the purchase price to be paid by the Purchaser. At the conclusion of the bidding and upon Court approval of the successful bid, all Deposits made by bidders other than the Successful Bidder or Backup Bidder, as hereafter defined, will be promptly returned (without interest). The deposit of the Backup Bidder will be promptly returned to the Backup Bidder after the Successful Bidder closes on the sale of the Aircraft. In the event the Successful Bidder fails to timely close on the sale of the Aircraft, the Successful Bidder shall forfeit its Deposit and the Back-up Bidder will become the new Successful Bidder, such Backup Bidder's Deposit shall be applied to the purchase price for the Aircraft.

c. **Live Auction Bidding.** Upon review of the Qualified Bids, the Trustee and the Fractional Owners may, in their discretion, elect to invite one or more of the parties that have submitted the highest Qualified Bids to participate in live auction bidding at a time and place to be determined by the Trustee and the Fractional Owners. Notwithstanding the foregoing sentence, any Fractional Owner or group of Fractional Owners that submits a Qualified Bid shall be invited to live auction bidding.

d. **Successful Bidder/Backup Bidder.** Following the completion of live auction bidding, the person or entity that submits what the Trustee and co-owners reasonably believe constitutes the highest and best offer shall constitute the "**Successful Bidder**." Following the completion of live auction bidding, the individual or entity that submits what the Trustee and co-owners reasonably believe constitutes the second highest and best offer shall constitute the

"**Backup Bidder**." The bids of the Successful Bidder (the "**Successful Bid**") and Backup Bidder (the "Backup Bid") shall be presented to the Court for approval.

      e.  **Bid Form.** All bids shall be submitted in substantially the form as the Bid Form attached hereto as Exhibit "B".

      f.  **Successful Bidder Responsible for Closing Costs.** The Successful Bidder (or the Backup Bidder, as the case may be) is responsible for all closing costs and fees.

      g.  **Bankruptcy Court Approval.**     The Trustee and the co-owners will select the Successful Bidder based on their collective business judgment, and will promptly thereafter file a notice with the Court, with copies served upon all Qualified Bidders, as well as such parties described in Section 9 of this Motion, identifying the Successful Bid and the Backup Bid. The Court will conduct a final hearing to consider approval the sale promptly following the selection by the Trustee and co-owners of the Successful Bid and the Backup Bid.  In order to be considered by the Court at the final hearing, any objection to the approval of the sale must be filed and served on the Trustee no later than five (5) days prior to the hearing, and must specify the factual and/or legal basis for the objection.  The Closing shall occur no later than five (5) days after entry of an order approving the sale to the high bidder. The automatic stay afforded by Rule 6004(h) of the Federal Rules of Bankruptcy Procedure shall be waived.

      h.  **Order Approving Sale**. The Sale contemplated herein shall be subject to the entry of a Final Sale Order, which shall contain findings,  conclusions and decrees, including but not limited to:

         i.    that the Successful Bidder (or the Backup Bidder, as the case may be) is a good-faith purchaser entitled to the protections afforded good-faith purchasers pursuant to 11 U.S.C. §363(m) of the Bankruptcy Code;

        ii.    that the sale was conducted in good-faith and at arms length;

iii.    that the Successful Bidder (or the Backup Bidder, as the case may be), shall have no liability by virtue of being the Successful Bidder (or the Backup Bidder, as the case may be) to any individual or entity with notice of this Motion, or otherwise bound under applicable law by the Final Sale Order, for any claims in the nature of fraudulent transfers, successor liability, alter ego claims or merger in fact.

iv.    the Aircraft shall be sold free and clear of all liens, claims, interests, and encumbrances with all valid liens, claims and encumbrances to attach to the proceeds of sale to the same extent, validity and priority as existed on the Petition Date;

v.    approving the sale and transfer of the Sale Assets to the Successful Bidder; and

vi.    affording the ability to close on such sale immediately waiving the automatic stay afforded by Rule 6004(h).

i.    **Forfeiture of Deposit**. If any Successful Bidder fails to close the purchase in accordance with the terms hereof and any Order of this Court, such Successful Bidder will forfeit its Deposit and the Aircraft will be sold to the Backup Bidder or otherwise pursuant to this Court's Order.

j.    **No Representations**. The Aircraft shall be purchased on an **"as is, where is"** basis, with no representations or warranties. At closing, the Trustee shall provide the Successful Bidder (or the Backup Bidder, as the case may be) with a traditional Trustee's Deed and a fully executed Form 8050-2 Bills of Sale which shall convey 100% of the interest in the Aircraft.

k.    **Due Diligence**. Due diligence and pre-purchase inspections (if any) must be completed in advance of the submission of a bid. The Trustee will make available the Aircraft and its records and log books, at the sole cost and expense of the Bidder.

l.   **Payment.** The purchase price for the Aircraft as finally approved by the Court shall be payable in full at the Closing by wire transfer of immediately available funds in U.S dollars.

m. **Closing.** The sale of the Aircraft shall be consummated within five (5) business days after the Court approves the sale (the "Closing"). At the time of the Closing, the Aircraft shall be located at its current location.  The Net Proceeds from sale (as defined in the Settlement Agreement) shall be distributed in accordance with the Settlement Agreement.

n.   **Secured Creditors.**  The sale of the Aircraft shall be fee and clear of all liens, claims, and interest, with liens to attach to proceeds. Based upon review of the claims register and a review of the title report for the Aircraft, the Trustee believes that the parties listed on Exhibit "D" ("Secured Creditors") may assert a secured claim ("Secured Claim") against the Aircraft.  Contemporaneous herewith, the Trustee has filed a complaint to determine the extent, validity and priority of the Secured Claims.  The sale will be for all cash and there will be no credit bids.

9.   **Notice.** The Trustee has served this Motion: (a) via email to all fractional owners of any Piaggio P-180 aircraft that was managed by Avantair, Inc. other than Settling Owners (as defined in the Settlement Agreement), as shown on the Debtor's books and records; and (b) the Nonsettling Owners and all parties shown by a FAA title search or known to the Trustee that may claim a lien or security interest against or in the Aircraft via first class U.S. Mail.

10.   **Advertising.** The Trustee proposes to publish the Notice of Sale in the form attached hereto as Exhibit "A": (a) electronically on various websites, which may include Aeroclassifides, Globalair.com (Brokernet.com) and/or FindAircraft.com; and (b) via email to

interested prospects who have contacted the Trustee or Trustee's counsel as of the date of the entry of an order approving this Motion.

## V.    BASIS FOR RELIEF

11.    Because of substantial ongoing maintenance and storage costs, the Trustee believes that a prompt sale of the Aircraft will maximize value of the Estate's assets for the benefit of creditors. The Trustee further believes the Bid Procedures will yield the best price in this context.

12.    Section 363(b) of the Bankruptcy Code provides that "... the Trustee, after notice and hearing, may use, sell, or lease other than in ordinary course of business, property of the estate." The requirement of Section 363(f) for a sale free and clear of liens have been met in that the sale price will exceed the total of all Secured Claims asserted, and certain of the Secured Claims are disputed. 11 U.S.C. Section 363(f)(3) and (4).   Sale of the interests of the Trustee, as well as the Settling Owners and Nonsettling Owners is permitted by 11 U.S.C. Section 363(h), and the proceeds of sale will be distributed in accordance with 11 U.S.C. Section 363(j).

## VI.    GOOD FAITH PURCHASER

13.    The Trustee requests that the order approving the sales of the Aircraft also make findings that the Successful Purchaser is acquiring the Aircraft in good faith. As the Bid Procedures and notice requirements have been established to ensure that the Purchaser will be a good faith purchaser, the Trustee believes that good faith is and will be present when the Aircraft is sold pursuant to the procedures set forth herein.

14.    Specifically, the Court will have the opportunity to evaluate and approve all bids, thereby assuring absolute objectivity. No "special treatment" will be afforded any bidder.

Therefore, a finding that the Successful Bidder has acted in good faith within the meaning of Section 363(m) will be appropriate.

WHEREFORE, Beth Ann Scharrer, as Chapter 7 Trustee, respectfully requests this Court enter an Order that specifically (i) approves the Bid Procedures set forth herein; (ii) approve the Sale Notice; (iii) approves or otherwise sets the Bid Due Date; (iv) sets a date by which any objections to the proposed sale must be filed; (v) when appropriate, enter a final sale order granting the Estate authority to sell and compelling the Closing of the sale of the Aircraft to the Successful Bidders; (vi) shortens any and all applicable deadlines if necessary and (viii) grants such other and further relief as the Court deems just and proper.

EXHIBIT A
NOTICE OF SALE

PLEASE TAKE NOTE   that Beth Ann Scharrer, Trustee of the Bankruptcy Estate

of Avantair, Inc. is accepting bids for the following Aircraft:

| | |
|---|---|
| **Aircraft Make and Model:** | Piaggio Avanti P-180 |
| **Registration Number:** | N169SL |
| **Manufactured:** | 2007 |
| **Manufacturer's Serial No.:** | 1140 |
| **Engines:** | LH: PCE- RW0005 |
| | RH: PCE- RW0006 |
| **Propellers:** | LH: KU089 |
| | RH: HF226 |

Further inquiries concerning the Aircraft must be made in writing to the undersigned for

full bid procedures, information on the aircraft and terms of the bidding process.

**Amanda Applegate**
**Aerlex Law Group**
2800 28th Street, Suite 200
Santa Monica, CA  90405
T: 310-392-5200
C: 614-940-9181
E-mail: aapplegate@aerlex.com

## AIRCRAFT PURCHASE AGREEMENT

This Aircraft Purchase Agreement (the "Agreement") is made and entered into effective as of _____, 2013 by and between Beth Ann Scharrer, as Chapter 7 Trustee of the bankruptcy estate of Avantair, Inc. ("Seller") and _____, a_____ ("Buyer"):

### RECITALS

A. Seller is the beneficial owner of the following described aircraft, engines and propellors:

Airframe:

Make and
Model:
Serial No.
Registration
No.

Engines:

Make and
Model
Serial Nos.

Propellers:

Make and
Model:
Serial No.

B. Buyer offers to purchase the above-referenced Aircraft (as such term is defined below) from Seller for the purchase price set forth below on the terms and conditions set forth herein.

C. Buyer.and Seller now desire to enter into this Agreement for the purpose of setting forth all of the terms and conditions pursuant to which Buyer shall buy and accept and Seller shall sell and deliver the Aircraft.

NOW, THEREFORE, in consideration of the mutual covenants, conditions and agreements contained herein, the parties hereto agree as follows:

### AGREEMENT

1.   Purchase and Sale. Subject to the terms and conditions set forth herein, Seller hereby agrees to sell and deliver, and Buyer hereby agrees to buy and accept, the Airframe, Propellers, and Engines set forth above, together with all avionics,



EXHIBIT
B

tabbies

equipment, components, appliances, accessories, instruments and other items installed in or attached to the Airframe, Propellers, and/or Engines (collectively the "Aircraft Components"), and all and all in Seller's possession (including without limitation all manuals, the maintenance logs, log books for the Airframe, Engines, Propellers, and Aircraft Components, parts catalogs, interior and wiring diagrams, electrical prints and supporting technical publications, and any maintenance and other historical records) (collectively, the "Aircraft").  This Agreement may be accepted in writing by Seller at any time prior to the entry of the Closing Order (as defined below), and shall be irrevocable prior to that time.

2. Purchase Price; Payment Terms. The purchase price for the Aircraft (the "Purchase Price") is $_____ Dollars (US$_____). Buyer shall pay the Purchase Price to Seller in accordance with the following schedule:

   a. Deposit. Buyer has previously deposited or contemporaneously with delivery of this Agreement to Seller will deposit the sum of One Hundred Thousand Dollars (US$100,000.00) (the "Deposit") with Adams and Reese LLP ("Escrow Agent") as and for a deposit against the Purchase Price. The Deposit shall, subject to performance of Seller's obligations hereunder, be deemed non-refundable upon delivery by Seller to Buyer of a countersigned counterpart of this Agreement.  The Deposit shall, at Buyer's option, be immediately released from escrow and returned to Buyer (i) in the event that Seller fails to deliver title to the Aircraft after satisfaction of the conditions precedent to closing set forth in Section ____, or (ii) as a result of Seller's acceptance of another offer to purchase the Aircraft.

   b. .Deposit of Purchase Price.  The balance of the Purchase Price shall be deposited with Escrow Agent on or prior to one (1) business day prior to the Closing Date. On or prior to the Closing Date, Buyer shall submit written instructions to Escrow Agent instructing Escrow Agent to disburse the Purchase Price to the Seller, upon satisfaction by Seller or waiver by Buyer, of each of the conditions, covenants and agreements to be performed by Seller herein.

   c. Condition of the Aircraft at Delivery. Seller shall deliver the Aircraft to Buyer on the Closing Date in the same condition as on the date of  the completion of Buyer's Pre-Purchase Inspection, ordinary wear and tear excepted, taking into account any additional hours, cycles and/or time incurred in connection with the performance of this Agreement.   Buyer's has caused _____ (the "Inspection Facility") to perform a pre-purchase inspection of the Aircraft (the "Pre-Purchase Inspection") including the delivery to Buyer of the Pre-Purchase Inspection report (the "Inspection Report"). A copy of the Inspection Report is attached to this Agreement.

d. Location of Closing. On the Closing Date, Seller shall at its expense, tender the Aircraft to Buyer, in the condition required by this Agreement at its current location in _____.

e. Deliveries at Closing. On the Closing Date, Seller shall deliver to Buyer (i) a properly executed FAA approved form of Aircraft Bill of Sale (AC Form 8050-2) transferring title and ownership of the Aircraft to the Buyer, free and clear of all liens or encumbrances of any kind whatsoever, (ii) a Trustee's Bill of Sale in the form of that attached hereto as Exhibit C and (iii) an order of the United States Bankruptcy Court of the Middle District of Florida, Tampa Division in the chapter 7 case entitled In re Avantair, Inc. (Case No.            ) authorizing and approving the sale of the Aircraft to Buyer free and clear of all liens, claims and interests (the "Sale Order")  (collectively, the "Title Documents").  On the Closing Date, and upon the delivery of the Title Documents to Buyer, the Escrow Agent shall disburse the Purchase Price to Seller or to such other person or entity as may be specified in the Sale Order.

f. Closing Date. The Closing Date shall be within three (3) business days of the entry of the Closing Order (the "Closing Date") unless extended by the mutual written consent of the Buyer and Seller.

g. Taxes.  Buyer shall be responsible for the payment of any franchise, sales, use or similar taxes, duties or assessments that may be imposed by any governmental authority in connection with the sale and transfer of the Aircraft as herein contemplated or arising due to Buyer's ownership of the Aircraft as of or subsequent to the Closing Date, except for taxes measured by Seller's income or assets. Seller agrees that it will honor reasonable requests of Buyer with respect to the structure and location of the transfer of title contemplated hereunder so as to minimize Buyer's tax liability in connection therewith, provided that any additional costs or expenses shall be paid by Buyer.

h. Conditions to Buyer's Obligation to Purchase. The obligation of Buyer to purchase the Aircraft from Seller is subject to the satisfaction by Seller or, if applicable, the waiver by Buyer of each of the following conditions, on or prior to the Closing Date: (i) Seller shall have delivered, or shall have caused to be delivered to Buyer the Title Documents; and (ii) the Aircraft shall be in the condition required by Section 2.c.

i. Conditions to Seller's Obligation to Sell. The obligation of Seller to sell the Aircraft to Buyer is subject to: (i) Buyer's delivery to Escrow Agent of the Purchase Price and Buyer's performance or compliance with all other agreements, covenants and conditions required by this Agreement on or prior to the Closing; and (ii) the Bankruptcy Court has entered the Sale

Order, and there shall be no stay of the Sale Order by a court of competent jurisdiction.

3. **DISCLAIMER AND LIMITATION OF LIABILITY**. BUYER ACKNOWLEDGES THAT THE AIRCRAFT IS BEING SOLD AND DELIVERED TO BUYER IN "AS IS, WHERE IS, AND WITH ALL FAULTS" CONDITION. SELLER DOES NOT MAKE, GIVE, OR EXTEND, AND BUYER HEREBY DISCLAIMS AND RENOUNCES, ANY AND ALL WARRANTIES OR REPRESENTATIONS OF ANY KIND OR NATURE WHATSOEVER, EXPRESS OR IMPLIED, WHETHER ARISING IN LAW, IN EQUITY, IN CONTRACT, OR IN TORT, AND INCLUDING, WITHOUT LIMITATION, ANY IMPLIED WARRANTY OF MERCHANTABILITY, AIRWORTHINESS, DESIGN, CONDITION, OR FITNESS FOR A PARTICULAR USE. IN NO EVENT MAY SELLER BE HELD LIABLE TO BUYER FOR ANY INDIRECT, INCIDENTAL, SPECIAL, CONSEQUENTIAL, OR PUNITIVE DAMAGES OF ANY KIND. FURTHER NEITHER SELLER NOR BANK MAKE ANY EXPRESS OR IMPLIED WARRANTIES OR REPRESENTATIONS OF ANY KIND OR NATURE WHATSOEVER THAT AIRCRAFT IS COMPLETE, AIRWORTHY, INSURABLE, FIT FOR SERVICE, OR CAPABLE OF BEING LICENSED OR AUTHORIZED FOR ANY FLIGHT, USE, OR OPERATIONAL ACTIVITIES OF ANY KIND OR NATURE WHATSOEVER. Purchaser has had the opportunity to have the Aircraft and its records inspected by an FAA licensed mechanic or by an FAA approved repair station. Purchaser acknowledges that Purchaser is satisfied with the workmanship and condition of Aircraft and that it is suitable for Purchaser's own purposes, and has not relied on any representations of Seller. Seller will transfer to Purchaser, at the time of the delivery of Aircraft, such log books and other records, if any at all, pertaining to Aircraft which are in the possession of Seller. SELLER DISCLAIMS ALL EXPRESS OR IMPLIED WARRANTIES OF ANY KIND OR NATURE WHATSOEVER AS TO ANY LOG BOOKS OR OTHER RECORDS PERTAINING TO AIRCRAFT AND MAKE NO REPRESENTATIONS AS TO THE ACCURACY, COMPLETENESS, OR VERACITY OF ANY LOG BOOKS OR OTHER SUCH RECORDS PERTAINING TO THE AIRCRAFT. BUYER HEREBY WAIVES AND RELEASES SELLER FROM ANY AND ALL CLAIMS, LOSSES, DEMANDS OR LIABILITY OF EVERY KIND WHICH SUCH PERSON OR PERSONS MAY HAVE, OR CLAIM TO HAVE, AGAINST SAID SELLER BY REASON OF ANY INJURY, DEATH OR PROPERTY DAMAGE OF ANY KIND SUSTAINED WHILE BEING AN OWNER, AN OPERATOR, A PILOT, OR A PASSENGER IN THIS AIRCRAFT. THIS WAIVER AND RELEASE IS BINDING ON THE HEIRS, PERSONAL REPRESENTATIVES AND ASSIGNS OF THE PURCHASER, SUBSEQUENT OWNER, PILOTS AND PASSENGERS. Purchaser shall defend, indemnify, and hold Seller harmless from each and every claim made against Seller or Bank as a result of Purchaser's ownership, possession, use or operation of Aircraft from the date of this Agreement.

4. <u>Commissions</u>. Seller represents and warrants that neither the Seller, nor any of its agents or employees has employed any person or incurred any liability for the payment to any person of any fee or commission in connection with the purchase and sale of the Aircraft as herein contemplated.   Seller agrees that it shall be responsible for and pay the fees and expenses of any broker or dealer employed by Seller in connection with the acquisition of the Aircraft.

5. <u>Termination.</u> This Agreement may be terminated only as follows:

    a.   Mutual written agreement of Buyer and Seller at any time prior to the Closing Date.

    b.   By written notice given by either party hereto if the other party fails or refuses to close the purchase and sale of the Aircraft in accordance with the terms and conditions of this Agreement on the Closing Date, so long as the terminating party is not otherwise in default with respect to any of its obligations pursuant to this Agreement.

If this Agreement is terminated by mutual agreement pursuant to Section 5.a., the Seller shall instruct Escrow Agent to return the Deposit to Buyer and neither party hereto shall have any further rights or obligations to the other.   If this Agreement is terminated by Seller pursuant to Section 5.b. above, then Seller shall as its sole and exclusive remedy have the right to have the Deposit released from escrow and delivered to it. If this Agreement is terminated by Buyer pursuant to Section 5.b. above, as Buyer's sole and exclusive remedy, the Deposit shall be released from escrow and returned to Buyer.

    6.   <u>Assignment</u>. The parties expressly acknowledge and agree that Buyer shall have the right to assign this Agreement and Buyer's rights and obligations hereunder to any entity owned or controlled by or under common control with Buyer, provided that such entity has the financial ability to complete the purchase of the Aircraft as contemplated herein, and further provided that Buyer shall remain jointly and severally liable together with its assignee for the performance of all of the obligations and duties of the Buyer under this Agreement. Upon consummation of any such assignment, the assignee shall execute and deliver any escrow agreement executed in connection herewith and the Deposit shall continue to be retained pursuant to the terms hereof and such escrow agreement.

    7.   <u>Notices</u>.  Any notice required to be given under this Agreement or by any applicable provision of law, shall be in writing and shall be deemed given upon actual receipt when delivered personally, by express mail service, by courier service that provides delivery receipts, or by facsimile (provided the

original is delivered promptly in accordance with this Section). All notices to be delivered hereunder shall initially be addressed as follows:

To Seller:

To
Buyer:

8.    Waivers. Seller or Buyer may, by written notice to the other party, (i) extend the time for the performance of any of the obligations or other actions of the other party under this Agreement, (ii) waive compliance with any of the conditions or covenants of the other party contained in this Agreement or (iii) waive performance of any of the obligations of the other party to this Agreement. With respect to any power, remedy or right provided herein or otherwise available to any party to this Agreement, (x) no wavier or extension of time will be effective unless expressly contained in a writing signed by the waiving party and delivered as herein required and (y) no modification or impairment will be implied by reason of any previous waiver, extension of time, delay or omission of any party to this Agreement.

9.    Amendments. This Agreement may only be amended or supplemented by written agreement of the parties hereto.

10.    Expenses. Each of the parties hereto shall pay and discharge its obligations with respect to the negotiation, preparation and execution of this Agreement and any other documents required herein, including without limitation, the cost of legal counsel, accountants and any other consultants or experts.

11.    Entire Agreement. This Agreement, its exhibits and any schedules attached hereto, shall constitute the entire agreement between the parties hereto with respect to the subject matter hereof and shall supersede all prior agreements, understandings, oral or written, between the parties hereto with respect to the purchase and sale of the Aircraft, including without limitation, any offer to purchase or any other offer letter or acceptance letter previously executed by or on behalf of the parties hereto. No representation, warranty, promise, inducement or statement not otherwise contained herein shall be binding on either party hereto, nor shall either party hereto be bound by, or be liable for, any alleged representation, warranty, promise, inducement or statement not herein set forth.

12. <u>Governing Law</u>. The laws of the Florida shall govern this Agreement.

13. <u>Attorney's Fees</u>. Should any action or proceeding be commenced between the parties hereto or their respective representatives concerning the enforcement or interpretation of any of the provisions of this Agreement or the rights and duties of any person or entity hereunder, solely as between the parties hereto or their successors, the party prevailing in such proceedings shall be entitled to the reasonable attorney's fees and expenses of counsel and court costs incurred by reason of such action.

14. <u>Rules of Construction</u>. The section headings in this Agreement are inserted for convenience only and in no way define, limit, or extend or interpret the scope of this Agreement or of any particular section of this Agreement. The validity, legality or enforceability of any particular provision of this Agreement shall not affect the remainder of this Agreement, even if one or more of the provisions of this Agreement is found to be invalid, unenforceable or illegal. Whenever any representation or warranty is stated to be based on the knowledge of a party to this Agreement, such phrase shall refer to whether the party, or if an entity, any of such party's senior management or such party's broker has actual knowledge of the matters involved.

15. <u>Counterparts</u>. This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

**[The remainder of this page is intentionally left blank. Signature page follows.]**

IN WITNESS WHEREOF, the parties have executed this Agreement by their duly authorized representatives, as of the date set forth in the preamble hereto.

SELLER:                              BUYER:


By: _____    _____

Title: _____               Title: _____

# EXHIBIT "C"
## Aircraft Description

| | |
|---|---|
| **Aircraft Make and Model:** | Piaggio Avanti P-180 |
| **Registration Number:** | N169SL |
| **Manufactured:** | 2007 |
| **Manufacturer's Serial No.:** | 1140 |

**Engines\*:**  LH: PCE- RW0005
RH: PCE- RW0006

**Propellers\*:**  LH: KU089
RH: HF226

\* The original engines and propellers may not be currently affixed to the airframe. It has been confirmed that the engines currently attached to the airframe belong to Banc of America and are on lease to Dallas Airmotive, Inc. and were subleased to Avantair, Inc. prior to a default by Avantair, Inc. Reasonably prior to the deadline for submitting Qualified Bids pursuant to Section 8a of the Motion, the original engines and propellers will be located and arrangements made to cause them to be attached to the airframe.