IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

- - - - - - - - - - - - - - - x
IN RE:                         :
                               :
   AVANTAIR, INC.              :   Case No. 8:13-bk-09719-CPM
                               :   Chapter 7
              Debtor           :
- - - - - - - - - - - - - - - x
                               U.S. Courthouse
                               801 N. Florida Avenue
                               Tampa, Florida 33602
                               January 24, 2014
                               3:36 P.M.


TRANSCRIPT OF HEARING

(1) Ruling on Motion to Approve Compromise of Controversy with
Fractional Owners of N109SL Filed by Lynn Welter Sherman,
Attorney for Trustee on behalf of Trustee Beth Ann Scharrer
(Doc. #412);

(2) Motion to Approve Compromise of Controversy with Fractional
Owners of N104SL Filed by Lynn Welter Sherman, Attorney for
Trustee on behalf of Trustee Beth Ann Scharrer (Doc. #482);

(3) Limited Objection to Motion to Approve Settlement and to
Approve Sale of N138SL Filed by Donald R. Andersen on behalf of
Interested Party CCA of Tennessee, Inc. (related document(s)
#455) (Doc. #540);

(4) Further hearing on Emergency Application/Motion for
Authority of Trustee to Deliver Maintenance Records to TPE
Flight Log Services, LLC Filed by Lynn Welter Sherman, Attorney
for Trustee, on behalf of Trustee Beth Ann Scharrer (Doc. #499);

(5) Further Hearing on the Claw-Out Notices (related document(s)
479, 506, 607, 508, 509, 514, 515, 518, 519, 521, 523 and 524).

BEFORE THE HONORABLE CATHERINE PEEK McEWEN
UNITED STATES BANKRUPTCY JUDGE


*Proceedings Digitally Recorded by Court Personnel;*
*Transcript Produced by Court-Approved Transcription Service.*

_____

**JOHNSON TRANSCRIPTION SERVICE**
7702 Lake Cypress Drive
Odessa, Florida  33556
(813) 920-1466

                            APPEARANCES
                           (Via CourtCall)

For Corrections
Corporation of America:        DONALD R. ANDERSEN, Esquire
                               Gorby Peters & Associates, LLC
                               Two Ravinia Drive
                               Suite 1500
                               Atlanta, Georgia  30346
                               404-239-1150
                               dandersen@gorbypeters.com


For Global Aerospace:          ROGER CLARK, Esquire
                               The Clark Law Group
                               11400 W. Olympic Boulevard
                               Suite 1150
                               Los Angeles, California  90064
                               310-478-0077
                               rclark@cgold.cc


LW Air I through V, LLC:        GREGORY PLOTKO, Esquire
                               Kramer Levin Naftalis & Frankel
                               1177 Avenue of the Americas
                               New York, New York  10036
                               212-715-9100
                               gplotko@kramerlevin.com


For Turbo Prop East:           ISABEL W. CALLONA, Esquire
                               1 West Street
                               Suite 70
                               Pittsfield, Massachusetts 01201
                               413-896-5844


For Signature Flight
Support Corporation:           GREGORY J. MASCITTI, Esquire
                               LeClairRyan, P.C.
                               Suite 1100
                               2318 Mill Road
                               Alexandria, Virginia  22314
                               703-647-5924
                               gregory.mascitti@leclairryan.com


Also Present via Court Call:

CFO for Turbo Prop East:       AMY SMITH

3

APPEARANCES
(In the Courtroom)

For Beth Ann Scharrer
Interim Chapter 7 Trustee:     TIFFANY DiIORIO, Esquire
                               Adams and Reese, LLP
                               101 E. Kennedy Boulevard
                               Suite 4000
                               Tampa, Florida  33602
                               813-402-2880
                               tiffany.diiorio@arlaw.com


For Global Aerospace, Inc.:    KEITH APPLEBY, Esquire
                               Hill, Ward & Henderson, P.A.
                               101 E. Kennedy Boulevard
                               Suite 3700
                               Tampa, Florida  33602
                               813-221-3900 x 3139
                               kappleby@hwhlaw.com


Fractional Owners as
Set Forth in Document 277:     JAY VERONA, Esquire
                               R. QUINCY BIRD, Esquire
                               Shumaker Loop & Kendrick, LLP
                               101 E. Kennedy Boulevard
                               Suite 2800
                               Tampa, Florida  33602
                               813-229-7600
                               jverona@slk-law.com
                               qbird@slk-law.com


For Iberia Bank:               JOHN LAMOUREUX, Esquire
                               Carlton Fields Jorden Burt, P.A.
                               P.O. Box 3239
                               Tampa, Florida  33601
                               813-229-4224
                               jlamoureux@cfjblaw.com


For LW Air:                    DONALD KIRK, Esquire
                               Carlton Fields Jorden Burt
                               4221 W. Boy Scout Boulevard
                               Suite 1000
                               Tampa, Florida  33607
                               813-229-4334
                               dkirk@cfjblaw.com

4

1                          **P R O C E E D I N G S**

2                  COURTROOM CLERK:  All rise.  Court is now in

3      session.

4                  THE COURT:  Please have a seat.

5                  COURTROOM CLERK:  Avantair, Incorporated, Case

6      No. 13-9719.

7                  THE COURT:  All right.  I'm going take appearances.

8      I'll call the role for the phone appearances first.  Donald

9      Andersen for Corrections Corporation of America.

10                 MR. ANDERSEN:  I'm present, Judge.

11                 THE COURT:  Amanda Applegate for Fractional Owners?

12                 MR. VERONA:  I don't think she's going to be on the

13     phone, Your Honor.

14                 THE COURT:  Okay.  Not here.

15                 John Bingham of PIGL?

16                 (No response.)

17                 THE COURT:  Not here.

18                 Roger Clark with Global Aerospace?

19                 MR. CLARK:  I'm here, Your Honor.

20                 THE COURT:  All right.  Isabel Callona for Turbo

21     Prop?

22                 MS. CALLONA:  Present, Your Honor.

23                 THE COURT:  All right.  Gregory Mascitti for

24     Signature Flight Support Corporation?

25                 MR. MASCITTI:  Present, Your Honor.

1          THE COURT:  All right.  Marvin Mohney for Dallas

2     Airmotive?

3               (No response.)

4          THE COURT:  Not here.

5          Gregory Plotko for LW?

6               (No response.)

7          THE COURT:  Not here.  And --

8          MS. CALLONA:  Your Honor, I anticipate --

9          THE COURT:  Pardon me.

10         MS. CALLONA:  Your Honor, Isabel Callona here.

11    I've been speaking with Greg and I would expect him to join

12    us today.

13         THE COURT:  Okay.  Well, he's not --

14         COURTCALL OPERATOR.  Pardon my interruption, Your

15    Honor.  This is the Courtcall Operator and Mr. Plotko is

16    connected and his line is open.

17         THE COURT:  His what?  I couldn't hear you.

18         COURTCALL OPERATOR:  His line is open.  He is

19    not --

20         THE COURT:  Okay.  Mr. Plotko, are you there?

21              (No response)

22         THE COURT:  Well, his line may be open but he's not

23    responding, or we're not picking up the audio from his line.

24         COURTCALL OPERATOR:  I am not showing that he is

25    speaking on our end as well, Your Honor.

6

1          THE COURT:  Okay.  I'll mark him not here until he

2     can figure out a way to make the appearance.

3          And last, but not least, Amy Smith for Turbo Prop

4     East as well.

5          MS. SMITH:  Present, Your Honor.

6          THE COURT:  All right.  In the courtroom, who do we

7     have?

8          MR. VERONA:  Jay Verona and Quincy Bird for a

9     number of fractional owners.

10          THE COURT:  All right.  Thank you.

11          MR. KIRK:  Your Honor, Donald Kirk, LW Air.

12          THE COURT:  All right.

13          MR. APPLEBY:  Good afternoon, Your Honor.  Keith

14     Appleby on behalf of Global Aerospace.

15          THE COURT:  All right.

16          MR. LAMOUREUX:  Good afternoon, Your Honor.  John

17     Lamoureux on behalf of Iberia Bank --

18          THE COURT:  Well, well.

19          MR. LAMOUREUX:  -- a new client of the firm's.

20          THE COURT:  I'm sure you filed your 2019 statement

21     already, didn't you?

22          MR. LAMOUREUX:  I was called this morning, but I

23     will make sure one gets filed, Your Honor.

24          THE COURT:  Okay.  Thank you.  And?

25          MS. DiIORIO:  Good afternoon, Your Honor.  Tiffany

7

1   Diiorio on behalf of the Chapter 7 Trustee.

2           THE COURT:  All right.  Just for you, I'm going to

3   give you a Ricola.

4           MS. DiIORIO:  Thank you.

5           THE COURT:  Ms. Garcia, would you please give that

6   to her.

7           All right.  Thank you all for making your

8   appearances both by phone and in person.

9           MR. PLOTKO:  Your Honor, this Greg Plotko.  My

10  phone malfunctioned and I'm actually on.

11          THE COURT:  Your phone what?

12          MR. PLOTKO:  Sorry about that.  It had

13  malfunctioned.  I dialed back in.

14          THE COURT:  Okay.  You're here, then.  I'll note --

15          MR. PLOTKO:  I'm here then.  Thank you.

16          THE COURT:  I'll note the record accordingly.

17          We'll go forward with the matters that are on the

18  calendar today.  And we will have a housekeeping discussion

19  that relates to the fact that our recordings -- we had a

20  lapse in our recording procedure that caused us not to have

21  available a recording for the January 15th hearing, at which

22  time I made some additional remarks concerning what is a

23  plane issue in connection with prior approvals of compromises

24  that dealt with sales of airplanes.

25          I said a few things and we also took limited

1  objections orally from Mr. Andersen on the two motions to

2  approve the compromise that we had pending that day.  We also

3  heard from Mr. Clark about clarifying whether my ruling meant

4  that I was dealing -- or that I denied that there was any

5  tort of conversion.

6           There may be some other things that were discussed

7  that you all want to try to recreate, but we'll do that at

8  the end of this hearing.  So, let's go forward.

9           Ms. DiIorio, it's your show.

10          MS. DiIORIO:  Yes, Your Honor, good afternoon.  And

11 I apologize, I am terribly under the weather.

12          THE COURT:  As long as your coughs can't travel 30

13 feet --

14          MS. DiIORIO:  And I can tell you --

15          THE COURT:  -- or 10 feet that way or 10 feet that

16 way, I think everyone's happy to have you here.

17          MS. DiIORIO:  To make everyone feel better, I am no

18 longer contagious; this is just the aftermath of it --

19          THE COURT:  Okay.

20          MS. DiIORIO:  -- and trying to get rid of it.

21          THE COURT:  Maybe, Ms. Garcia, you could ask for

22 someone to bring her some water.

23          MS. DiIORIO:  Your Honor, I believe on the

24 application/motion for the Trustee to deliver the maintenance

25 records to TPE Flight Log Services, LLC, we have been in

1  negotiations regarding the consensual order.  And I'm happy

2  to report that I have the order to hand up to the Court

3  today.

4          THE COURT:  All right.  Great.

5          MS. DiIORIO:  If I may?

6          THE COURT:  Yes.  Thank you.

7          Okay.  If anyone on the phone or in the courtroom

8  in person has not had a chance to see this and wants me to

9  read it, I will.

10          MR. CLARK:  Your Honor, this is Roger Clark.  I

11  certainly don't need you to read the order.  I have what I

12  believe is the most recent version of it that was sent

13  yesterday.

14          My only comment is in regard to Annex 1 on

15  paragraph 1(b).  It does not make a provision for obtaining

16  copies of the maintenance logbooks by other interested

17  parties.  It seems to be limited just to owners of aircraft.

18          And I can envision some circumstances that other

19  interested parties may like to get a copy as well.  So my

20  only request would be that there be just an addition that

21  paragraph 1(b) also applies to other interested parties.

22          THE COURT:  Paragraph 1(b) Romanette (i)?

23          MR. CLARK:  That is correct, Your Honor.  Yes.

24          THE COURT:  Okay.  Does anyone have any problem

25  with allowing anybody, because who's to determine what an

1  interested party is -- oh, wait a minute.

2          MS. DiIORIO:  Your Honor, I --

3          THE COURT:  Hold on, hold on.  Let me read it.

4          It talks about the original logbooks.  So you're

5  not suggesting that an interested party can get an original

6  logbook, are you, Mr. Clark?

7          MR. CLARK:  No, Your Honor, I'm not.  I'm just

8  suggesting that there may be circumstances where copies may

9  be needed or required.

10          THE COURT:  Okay.  Well, then, I don't know who was

11  going to speak, but I guess somebody for Turbo Prop East.  I

12  could add a --

13          MR. PLOTKO:  Your Honor, just a -- this is Craig

14  Plotko on behalf of LW Air.

15          THE COURT:  Okay.

16          MR. PLOTKO:  May I be heard?

17          THE COURT:  Yes.

18          MR. PLOTKO:  Yes.  You were sort of heading in the

19  direction, I think, I'm sure most people are thinking of,

20  which is this order really involves the return of original

21  records and that the order Your Honor entered on January 13th

22  really discusses the obtaining of copies and the costs

23  associated with that and the process.

24          So, there may be a different order that this really

25  has to modify -- that that request would have to modify.

11

1          THE COURT:  Okay.  So maybe what I should do is

2    interlineate something that -- a decretal paragraph near the

3    end, or at the end, or add a sentence at the end of the

4    decretal paragraph that's there that says, "This order does

5    not supersede or recede from the Court's January 13th order

6    with respect to those who may obtain copies"?

7          MR. PLOTKO:  That's right.  I just think that

8    original records should only go to those owners that are on

9    the FAA registry, as opposed to --

10          THE COURT:  I agree.

11          MR. PLOTKO:  -- a copy.

12          THE COURT:  I agree.  So does anybody mind if I add

13   a sentence at the end of this that says that, "Nothing in

14   this order shall supersede or amend the relief that is

15   accorded in the January 13th order as to copies"?

16          (No response.)

17          THE COURT:  Nobody has a problem with that?

18          MR. CLARK:  Your Honor, this is Roger Clark.  I

19   certainly do not and I do not have an objection.  That is, I

20   am not recalling the particulars of the January 13th hearing,

21   but I understand it did address that interested parties could

22   get copies.  And with that, then I'm satisfied.

23          THE COURT:  Okay, good.  Okay, good.  All right.

24   Then we'll add to that.

25          Okay.  Next, Ms. DiIorio?

1            MS. DiIORIO:  Your Honor, I think next on the

2     docket today is further hearing on the claw-out notices.

3     I've been told from Ms. Sherman that all of the parts that

4     were subject to the claw-out notices were removed from the

5     auction.  And we are attempting to work through resolving who

6     owns what, or what priority of ownership, or liens and the

7     like on those parts.  We're hoping to get that resolved in a

8     consensual matter.

9            To the extent we're not able to, we'll be filing

10    adversary proceedings.  We'll be filing adversary proceedings

11    to determine the extent, validity and priority.

12            THE COURT:  Okay.  Well, let's just leave it at

13    that.  No action.

14            And, Ms. Garcia, no action taken today.  We will

15    react as the Trustee and interested parties file things to

16    resolve those disputes.

17            Okay.  Now, let me go to the housekeeping issue.

18            I would like the record of the January 15th hearing

19    to be not reestablished word-for-word, but just the high

20    points.  And I'll give you all a chance to add what you

21    believe is the record of that hearing.  Let me tell you what

22    I believe, based on my recollection and my notes, the record

23    should consist of.

24            First, that Mr. Andersen, on behalf of his client

25    CCA, raised orally a limited objection to the two motions to

1    approve the compromise that were considered that day, those

2    being concerning N109SL and N104SL.  The objection -- the

3    limited objection that he stated was similar to that which he

4    has stated in writing with respect to a prior compromise that

5    I approved.  And, also, it was similar to an objection in

6    writing that was prematurely calendared for hearing on

7    January 15th.  He was filing a limited objection -- he did

8    file a limited objection to what we all supposed by then

9    would've been filed, which was a motion to approve a

10   settlement and compromise regarding the sale of N138SL.

11        So his oral, limited objection to N109SL and N104SL

12   is preserved for the record.  I overruled those.  I overruled

13   those for the same reasons that I overruled his first

14   objection to the first compromise that I approved.  So his

15   issues are preserved for appeal on that January 15th record.

16        Mr. Clark wanted to make sure that, because we had

17   some dialogue about conversion, in the sense of title and

18   ownership at an earlier hearing, that he wanted me to assure

19   that that didn't mean that I was making rulings that there

20   existed no tort of conversion with respect to the Debtor and

21   owners of parts and pieces of parts.

22        And I recall that what I was saying was that I made

23   my ruling based on the fact that I believe that the governing

24   documents lead the fractional owners to a breach of contract

25   claim against the Debtor because that's how I construed the

1   documents and using, to some extent, the ordinary course in

2   the industry about businesses like this where they're trying

3   to keep a fleet in the air and the custom and practice to

4   take parts off of one, put it on another to keep the fleet

5   flying, while at the same time expecting to replace the part.

6   That's what I said gives rise to the breach of contract.

7            To the extent that there are planes flying around

8   with stuff on them and owners want to go against another

9   owner for the tort of conversion, if issue and claim

10  preclusion principles don't apply, they don't apply.  So, I

11  was not ruling anything about the tort of a conversion

12  between owners.  I was asked to rule just on the compromises

13  that I was ruling on and that's what I did.

14           I also said that although in my notes I meant to

15  address this issue when I first made the ruling on what is a

16  plane, is it the Humpty-Dumpty model, or is it when the

17  musical chairs stop -- when the music stops in the musical

18  chair game model, I didn't address the cumbersomeness, the

19  unwieldiness, the impractical suggestion that some were

20  making that we actually go trace parts into planes that are

21  nowhere near here; they're in the air; they may be in

22  garages; they may be junk.  It's expensive.

23           So if I was wrong about whether this is, at bottom,

24  a breach of contract dispute between the owners and the

25  Debtor and it's something else, as Mr. Andersen was trying to

1  urge, more like title issues and ownership issues, then I

2  think that under Section 105 any law of equity that might

3  apply, it just cannot happen.  It's not just me.  No Court

4  would be able to do that in a practical, inexpensive, speedy

5  and just way as the Rules of Civil Procedure would have it.

6         Those were my high points that I took away from the

7  hearing on the 15th.  Does anyone want to add anything that

8  they think occurred that's really important to them?

9         MR. CLARK:  Your Honor, this is --

10        THE COURT:  Go ahead.

11        MR. CLARK:  Your Honor, this is Roger Clark.  In

12 regard to the Court's comments just a moment ago, I wanted

13 a clarification.  We filed points last month in December

14 pointing out why the issue of conversion is something that

15 will have to be resolved insofar as the Debtor itself is

16 concerned:  the manner in which the Debtor handled these

17 parts, its failure to properly document the removal, the time

18 limited nature of the parts, all in violation of law, which

19 implicates conversion issues in regard to the Debtor itself.

20        And based upon the Court's comments just a moment

21 ago, I'm not sure if the Court included the issue of

22 conversion against the Debtor not being ruled upon.  And so

23 I'd ask for clarification from the Court if that is indeed

24 the Court's intent, that the Court is not making a legal or

25 factual determination whether the Debtor committed acts of

16

1  conversion?

2          THE COURT:  Okay.  An act of conversion is what?

3  It legally comes into the possession of the Debtor and the

4  Debtor is allowed to use it.  The Debtor is supposed to

5  replace it not necessarily with the same part.

6          So I don't know how you get to a tort of conversion

7  but -- with those facts.

8          MR. CLARK:  Right.  Well, the part -- and it's

9  important to note, insofar as the issue of conversion is an

10  issue before the Court, we would submit that the Court cannot

11  make a ruling on whether a conversion occurred or did not

12  because that would require a factual determination.

13          And even though the program documents give the

14  Debtor the right to use the aircraft and parts, the right to

15  use those parts is constrained by other parts of the program

16  documents to maintain the air worthiness of the aircraft and

17  also by federal law.  The three declarations and affidavits

18  that were submitted by Mr. Verona all agree that the parts

19  typically are removed when an aircraft is down for routine

20  maintenance and then are replenished in the normal course of

21  business.  Issues of whether that indeed was occurring here

22  is very much a factual issue.

23          And, in fact, the Federal Aviation Administration

24  has made its own factual determination that what the Debtor

25  was doing was against federal law because it was not tracking

1  the life-limited parts which made them unairworthy as a

2  matter of law so that the Debtor was using illegal aircraft

3  and illegal parts and, in fact, issued its grounding order.

4          So the issue of whether the Debtor committed

5  conversion, I respectfully submit, Your Honor, that its not a

6  ruling that the Court can make on this record.  That requires

7  an evidentiary hearing which we have not had.

8           And we would request that the Court clarify its

9  ruling by stating that the Court has not ruled on whether the

10 Debtor has committed one or more acts of conversion.

11         THE COURT:  Well, I construed the contract.  And to

12 the extent that my construction would negate a claim for

13 conversion, because of the manner I construed the contract,

14 then maybe implicit in the ruling there is such.  But if

15 there's a contractual duty to replace, and not necessarily

16 with the same part, and if there's a contractual duty to keep

17 logs and they don't do that, I don't see how that amounts to

18 conversion.  It, to me, is a breach of contract claim.

19         MR. CLARK:  I mean, it --

20         THE COURT:  Just because they don't write in a log,

21 you know, "This has had 10 hours," that doesn't mean it's a

22 conversion.

23         MR. CLARK:  We had -- in the brief that we

24 submitted in December, Your Honor, we gave the Court a number

25 of cases that talked about when an entity or a person exceeds

1    its authority under contractual documents and actually

2    commits acts of conversion.  So you can have a breach of

3    contract and a conversion at the same time.

4           And what has happened here is that Avantair was

5    apparently operating its aircraft in violation of federal law

6    and was not removing these parts in the normal course of

7    business but was, because of financial issues, was actually

8    robbing parts from one aircraft and causing it to be

9    unusable, and then putting them in other aircraft, basically

10   committing -- or turning certain aircraft into donor aircraft

11   which was in violation of other requirements that the Debtor

12   had to all the fractional owners to maintain the air

13   worthiness of all the aircraft.

14          And the three affidavits that were submitted by

15   Mr. Verona all make the point that these cannibalization or

16   robbing of the parts, if you will, normally take place during

17   a normal maintenance process and that the aircraft -- the

18   parts are to be returned and replaced.  And it's a factual

19   issue as to whether that is what this Debtor was doing or was

20   not doing.  And that is something that is not before the

21   Court that it's able to rule upon at this point in time.

22          THE COURT:  All right.  I'm going to have to cut

23   you off for a minute.  I guess our clock in our courtroom is

24   slow; huh?  We're going to have to remember this.

25          COURTROOM CLERK:  I don't think so.

1          THE COURT:  Well, my watch says 3:58 and I'm

2    supposed to be somewhere at 4:00 for just a few minutes.  And

3    they're saying they're ready now?

4          COURTROOM CLERK:  Yes.

5          THE COURT:  At five of 4:00.  You all can sit

6    here.  The people in Tampa, if you would like to go next

7    door, Judge Williamson is getting sworn in.  On the phone,

8    if you don't mind, please, let me come back in about five

9    minutes.  Everyone can stay put on the phone and look at your

10   computers, or Tweet, or whatever you want to do.  I'll be

11   right back.

12         MR. CLARK:  Thank you, Judge.

13         (Off the record at 3:58 p.m.)

14         (Back on the record at 4:08 p.m.)

15         THE COURT:  All right.  We're back on the record in

16   the Avantair case.  Thank you for the ability to attend that

17   function in honor of my colleague who was just sworn into a

18   second 14-year term.

19         Mr. Clark, I don't know whether the elements of

20   conversion were necessarily wrapped up in or rejected by my

21   comments in the ruling that I made with respect to the first

22   compromise.  I don't know whether these -- it seemed to me

23   that the industry standard was, with the exception of maybe

24   the props and the engine, that the rest of these things were

25   all fungible.  It certainly wasn't the intent of the contract

1  that the parts not be replaced but a replacement part may not

2  be the same part.  So, I made my ruling.

3       MR. CLARK:  Right.

4       THE COURT:  To the extent that, you know, a

5  necessary consequence of the finding is that conversion could

6  not lie, then so be it.  If it's -- if the question is open,

7  then so be it.

8       MR. CLARK:  Your Honor, if I might?  The point I

9  was making just before the break was slightly different than

10  the point you made.  I think that we need to look no further

11  than it's a factual issue that Avantair had an intentional

12  and systematic practice removing parts from program aircraft

13  without proper documentation which was in violation of

14  federal law -- and the Federal Aviation Administration has

15  actually so found -- and that that activity exceeded

16  Avantair's specific authorization in the handling and use of

17  their program aircraft and its parts because it did not

18  comply with the program documents.

19       And as we pointed out in some papers, under the

20  *Restatement of Torts (Second)* 228, which said:  The one who's

21  authorized to make use of the chattel and uses it in a manner

22  exceeding the authorization is subject to liability for

23  conversion.

24       And that, factually, is very much an issue as to

25  whether Avantair did use these parts in a manner exceeding

1    its authorization because it failed to properly document

2    these parts which is required by federal law.

3              The Florida Supreme Court in the <u>Star Fruit</u> case

4    which is, you know, cited in our brief on December 9th, is in

5    accord saying that, you know, the wrongful handling of

6    property contrary to the terms of the trust or the agreement

7    will allow an action for conversion.  And factually, at the

8    very least, Your Honor, that's what we're facing right now.

9              And Mr. Appleby brought down a proposed order which

10   has a paragraph basically stating that the Court is making no

11   ruling one way or the other on whether conversion is being

12   ruled upon, either factually or legally.  And we kindly

13   request the Court to at least make that order, let it be a

14   part of the record, and to reconsider its position as it has

15   an opportunity to go back and revisit some of the materials

16   that we included.

17             THE COURT:  Well, one of the things I'm not going

18   to do is give anybody the right to go now, chase N169SL and

19   say, "That's my cup holder because my cup holder is in your

20   plane and even though Avantair was supposed to replace the

21   cup holder in mine with something else, it didn't.  And so, I

22   want my original cup holder back because that violates the

23   contract."  I don't want to open up that can or worms.

24             MR. CLARK:  And I certainly am not asking the Court

25   to do that.  Some of the fractional owners of 169, you know,

1  have made a claim for insurance coverage.  And this issue of

2  conversion may be relevant to that coverage claim by the

3  fractional owners of 169.  And that's why it's important, I

4  think, for the Court to abstain from making a ruling at this

5  point in time based upon the absence of any factual support

6  to make this determination that conversion did or did not

7  take place.

8          THE COURT:  Well, in the sense that Mr. Andersen

9  was arguing it with respect to these parts, I think I did

10  make a ruling because I rejected his contention.  I think

11  that on January the 15th we made a distinction regarding the

12  tort of conversion that has a different spin from title

13  issues.

14          But my findings are my findings.  And if I found

15  that a part that was supposed to be replaced wasn't replaced

16  and gives rise to a breach of contract, then with respect to

17  that part I don't see conversion because the obligation was

18  to replace it, not take that same part and put it back.

19          So, whatever flows from the ruling flows from the

20  ruling.  There is a complete transcript of the ruling.  And

21  so I don't know where it is that I said anything about

22  conversion in the original ruling that caused you to want to

23  stand up on January 15th and talk about that.  Maybe you were

24  reacting to the fact that I was reacting to Mr. Andersen's

25  comments.  But --

1      MR. CLARK:  Your Honor, the proposed order that was

2  submitted on the 15th had a reference to the brief that my

3  office submitted on the issue of conversion and then did not

4  address the issue in the rest of the order.  And my concern

5  at that point was the implication that the Court may have

6  very well been making a ruling on conversion and that's why

7  I'm attempting to seek a clarification that the Court was not

8  making a ruling on this record.

9      THE COURT:  I don't know what to tell you.  I

10  construed the contract; I said it was a breach of contract

11  claim.  It's the measure of damages; it's payable by money.

12  I don't know what more I can say.  I adopted the "musical

13  chairs when the music stops" alternative.

14      MR. CLARK:  Right.  Right.

15      THE COURT:  And if there is something in the

16  contract that says the very part that you took off needs to

17  be put back on, then I missed that part.  I think that the --

18      MR. CLARK:  And I'm not --

19      THE COURT:  If things are compensable by money,

20  it's a breach of contract claim.  It's not like they took the

21  cup holder and then carved it into, you know, a plate which

22  would be -- and then we're obligated to give you that thing

23  back and you get a plate instead of a cup holder.  I think I

24  found that the documents did not require return of a specific

25  item so long as one was replaced.

1          MR. CLARK:  Yes, Your Honor.  And you may have a

2    breach of contract and then the tort of conversion, as the

3    Court has already pointed out, are not necessarily the same

4    thing.  And this is why we're requesting the Court to

5    consider the conduct, practice and pattern of Avantair here

6    particularly, as it's focused on its failure to document the

7    removal of the parts, their number of cycles, number of hours

8    on the parts, all of which renders them unairworthy and makes

9    them illegal for use in the eyes of the federal law which is

10   itself, if that is shown to be the case, an act of conversion

11   by Avantair itself.

12          THE COURT:  Are you talking about parts that are

13   on pallets right now in the claw-out mode, that they are

14   unusable because of -- and that you've got an additional --

15   besides a breach of contract claim, you've got an additional

16   conversion claim for those parts?

17          MR. CLARK:  Yes, that is correct, Your Honor.  In

18   fact, I believe the FAA issued an additional order just week

19   before last requiring anyone to go back on these parts; and

20   if they can, to determine if the documentation for the number

21   of cycles or the number of flight hours on them can be

22   confirmed.  And if they cannot be confirmed, then they cannot

23   go back into these aircraft because they're unairworthy by

24   operation of law and it's a risk to the safety of flight of

25   passengers and crew members on these aircraft.

1            THE COURT:  Well, if you're talking about parts

2     that are on pallets, you're not talking about the planes that

3     are being sold that are flyable.

4            MR. CLARK:  Well, the point though is that all

5     these aircraft were grounded by the FAA, or at least I think

6     the substantial majority of them were last summer, because

7     the FAA had found a pattern of practice of Avantair removing

8     parts and swapping parts, cannibalizing parts without

9     documenting where they were and their life cycle.

10           THE COURT:  They were sloppy, they were messed up.

11    That's why they failed their -- you know, they were terrible

12    business managers, I get all that.

13           But you are objecting to orders that permit sales

14    of complete planes or, in the case of Mr. Andersen's client,

15    an incomplete plane.  And I don't know -- I guess I don't

16    know what you're complaining about.

17           MR. CLARK:  I'm not objecting to the remedy which

18    the Court is fashioning.  I'll let Mr. Andersen argue that.

19           What I'm just simply asking the Court to do is

20    refrain from making a ruling, either factually or legally,

21    that conversion did or did not occur.  Because that is an

22    issue that could come into play in a coverage claim that is

23    currently being made by some of the fractional owners of 169.

24    And that is an issue, Your Honor, I would request that the

25    Court reserve for another day so that we can develop a

 1  factual record so we know what Avantair actually was doing.

 2       THE COURT:  Well, the only conversion issue that

 3  was ever raised -- I mean, if you're interjecting something

 4  as a -- you know, sort of a new branch on the decision tree,

 5  I only appreciated that Mr. Anderson was arguing that as in

 6  the case of a stolen car.  Once the car is transferred by the

 7  thief, the end-user does not get title because of that type

 8  of a conversion.  That's what I thought Mr. Andersen was

 9  arguing.  And I don't know when conversion came up to where

10  you would need to raise it, so -- other than that.

11       MR. CLARK:  Well, it was addressed in the brief

12  that we filed on the 9th.  And then on the hearing I believe

13  on the -- I believe it was December the 12th, the Court noted

14  it had read the brief on conversion.  But as I understand the

15  Court's comments at that time they were directed solely to

16  the breach of contract issue, not the conversion issue.  And

17  I hope my memory serves me right, but I don't think the Court

18  made any ruling on conversion on the hearing on December the

19  12th.  And that's why it wasn't, I believe, necessary to deal

20  with it.

21       But then when the proposed order came up last week

22  on the 15th, where it referred to the brief on conversion, at

23  that point it was not verifiable --

24       THE COURT:  May I see the proposed order?  I don't

25  even know what you're talking about.  Have I entered an order

27

1  on the hearing for the 15th -- from the 15th?

2          MR. CLARK:  I don't believe you have, Your Honor.

3          MR. VERONA:  No.  What happened was we had a

4  hearing on December 12th.

5          THE COURT:  I need to have CHAP.  This is-- my

6  computer is totally unusable.  I can't even --

7          MR. VERONA:  Would you like the transcript?

8          THE COURT:  -- turn it off and turn it back on.

9          MR. VERONA:  I have the transcript from the

10 December 12th hearing and I have a proposed order that we

11 have proposed, Your Honor.

12          With all due respect, an issue on -- and it's

13 reflected in the transcript on November 22nd was not -- and

14 December 12th -- was not breach of contract versus

15 conversion.  The issue was the practice of removing parts

16 from one plane and putting them on another and whether that

17 was authorized under the program documents for purposes of

18 determining how proceeds from the sale of a particular plane

19 were to be distributed.

20          Your Honor in your remarks -- and if I may pass up

21 a copy of the transcript?

22          THE COURT:  Sure.  What page?

23          MR. VERONA:  Turning to page 33 through 35.

24          THE COURT:  Hold on a minute.  I've got too many

25 pieces of paper up here.  Okay.  Are we on yet?

28

1      COURTROOM CLERK:  Uh-uh (negative).

2      THE COURT:  Okay.  You've handed me something that

3 has an order on it --

4      MR. VERONA:  Yes.

5      THE COURT:  -- on top of it.

6      MR. VERONA:  Right.  That's our proposed order from

7 the --

8      THE COURT:  November 22nd --

9      MR. VERONA:  -- November 22nd.

10      THE COURT:  -- which I haven't entered yet.

11      MR. VERONA:   Right.  And you announced your ruling

12 on December 12th and this transcript is your announced ruling

13 on December 22nd.  And I'm directing Your Honor to page 33

14 which is when you made the announcement that is pertinent to

15 what Mr. Clark is talking about.

16      The only real difference between Mr. Clark's

17 proposed order and our proposed order is Mr. Clark's proposed

18 order makes an express determination or express finding that

19 you are not making a determination as to conversion.

20      Our objection to that is that you weren't making

21 any determination as to whether it's a breach of contract or

22 -- well, you weren't making -- you weren't determining what

23 type of cause of action this conduct raises.  You were

24 determining how proceeds were to be distributed pursuant to a

25 sale approved by the Court in accordance with the program

1    documents.

2            THE COURT:  But that depended on whether the

3    proceeds belonged to the owners because the parts belonged to

4    the plane based on my ruling, based on the construction of

5    the contract.

6            MR. VERONA:  Right.  So, you said at page 33,

7    "Everything, Mr. Andersen, that you have said and that Global

8    says points me to a breach of contract claim, plain and

9    simple."  So you referenced the fact that Global had raised

10   the issue of conversion and you characterized what you saw

11   the undisputed facts being as the breach of contract.

12           You were very careful in the preceding pages of the

13   transcript to ask Mr. Andersen whether he had any affidavits

14   from other industry participants that would contradict the

15   affidavits that we had tendered and he didn't.

16           So, whatever consequences flow out of those

17   undisputed facts, flow.  Not to state the obvious but,

18   obviously, Mr. Clark wants something to grab onto for

19   insurance claim purposes because conversion is one of the

20   exceptions in the policy.

21           THE COURT:  And how is conversion defined?

22           MR. VERONA:  Oh, I don't have the policy with me,

23   Your Honor.  But the point is that's -- they need -- they're

24   looking for somebody to make a determination that there was a

25   conversion and that wasn't done here.

1          And Your Honor didn't deal -- what we prepared is

2    consistent with what you ruled.  You didn't say one way or

3    the other -- you just said that this is a breach of contract.

4          We didn't even say in our proposed order that it's

5    a breach of contract.  We just approved the sale; we just

6    provided for the approval of the sale in accordance with your

7    reasoning as stated on the record and recorded in court.

8          As you said, "My ruling is my ruling," and it was

9    based on undisputed facts.  And whatever those facts --

10   whatever impact those facts have on a later potential

11   insurance claim they have.

12         MR. CLARK:  Your Honor, if I may.  There's a

13   continual reference to undisputed facts which raises the very

14   point that we have not had an evidentiary hearing.  There are

15   no such things as undisputed facts.  The fact is:  Exactly

16   what was Avantair doing?  And there is nothing in the record

17   to support that one way or the other.

18         The three affidavits of Mr. Ronald Brower, Jim

19   Lewis and Mr. Kronk all state clearly that even when parts

20   are removed, careful attention has to be given to the

21   documentation of those parts and that the replacement of

22   those parts occurs during normal routine procedures.  Those

23   all raise factual questions as to whether Avantair was doing

24   that here and we simply do not know that.  So there are

25   no, quote --

31

1      THE COURT:  Avantair was neglectful; everybody

2  knows it.

3      MR. VERONA:  Right.  But you don't need to make

4  a --

5      MR. CLARK:  But it may be worse than that, Your

6  Honor.  We don't know if it was only neglectful; it could've

7  been calculated and intentional.  We simply don't know.

8  Clearly, they were at least, in the best case scenario,

9  neglectful.  They may have been calculated.

10      MR. VERONA:  But, Your Honor, you don't need to

11  make a determination whether there was conversion or not.

12  You don't need to make a determination.

13      All you did was you looked at the contract and you

14  determined that we were -- that Avantair was authorized to

15  remove parts and put them on another plane and they breached

16  that contract.

17      THE COURT:  They didn't do it right.

18      MR. VERONA:  Now, if as a result of ruling you have

19  somehow impacted one way or the other a claim for conversion,

20  well, then so be it.  But there is no reason for you to say

21  expressly, "I'm not making a determination of conversion,"

22  because the undisputed -- there are undisputed facts.

23      There are undisputed facts in the record about what

24  Avantair did, what they failed to do, what industry standards

25  are.  And those facts have potential consequences.

1          But the issue of conversion does not need to be

2     expressly included or excluded from the scope of your order

3     because that wasn't before you.

4          THE COURT:  Well, somebody put it before me.

5     Mr. Andersen put it before me in the context of showing chain

6     of title could not be conveyed, but I rejected that.

7          MR. VERONA:  I understand.  And I guess my point

8     is that a finding that you expressly did not determine

9     conversion is inconsistent with what you ruled.  You were

10    silent on the issue.  You made certain determinations based

11    on what the contract -- the program documents say and based

12    on the undisputed facts in front of you.  And, again,

13    whatever consequences those have, they have.

14          Undoubtedly -- I say undoubtedly.  I believe Mr.

15    Andersen is going to take an appeal from that order.  You

16    know, there's going to be litigation down the line over

17    insurance claims.  And this Court shouldn't, with all due

18    respect, do anything to tilt the balance one way or the other

19    with respect to those issues.  You made your ruling based on

20    an analysis of the contract documents and the undisputed

21    facts in front of you and that's it.

22          THE COURT:  Okay.  I --

23          MR. ANDERSEN:  Your Honor, if I may, this is --

24          THE COURT:  I -- what?

25          MR. ANDERSEN:  This is Don Andersen and I have

1  avoided saying anything and will continue to avoid saying

2  anything with one minor exception.  And that is that I just

3  don't want my silence to be interpreted as acquiescence or

4  agreement in the various characterizations of the various

5  arguments that were made at the hearings in November and

6  December.  We do have transcripts of those hearings and I

7  think those transcripts speak for themselves as to what the

8  Court's rulings were and the Court's position was at the

9  time.

10          And I think that the Court has again today

11  reaffirmed its position and there's no need today, in our

12  view, to rehash it.  I don't think the Court is going to be

13  persuaded otherwise; otherwise, I would be arguing

14  vigorously.

15          But I just want to be clear on the record that

16  while all of this is informative today, I think that the

17  essence of the Court's rulings was in November and December.

18          THE COURT:  Right.  Let me make clear something.

19  No one asked me for an evidentiary hearing on those motions

20  to compromise back then.  I gave people the opportunity to

21  make proffers of testimony that would be different from that

22  which was proffered by the people that were proponents of the

23  sale.

24          I did not believe that there was any undisputed

25  fact -- excuse me -- any disputed fact that was relevant to

34

1  the decision on whether it's the Humpty-Dumpty version or the

2  musical-chairs version.

3       I had the contract at least that applied to those

4  two claims.  I had the affidavits.  And so I rejected the

5  ownership theory; I embraced the:  Avantair didn't do what it

6  agreed to do but you all gave them permission to at least

7  move the parts around; and if they didn't move the parts

8  around correctly, that gives rise to a claim because they

9  didn't follow the contract.

10      To the extent that a conversion claim can co-exist

11  with a breach of contract claim, I did not rule on that; that

12  is true.  A breach of contract claim or some obligation to

13  pay money without more doesn't give rise to a conversion

14  claim; but a breach of contract claim or obligation to pay

15  money with more, which I don't know because we don't have

16  those facts, that might give rise to a conversion.

17      So it's the breach-of-contract-plus area I have not

18  looked at, touched, decided, or anything.

19      Is that what you mean, Mr. Clark?

20      MR. CLARK:  Your Honor, that is, indeed, helpful.

21  And, you know, I think that was -- Mr. Verona was speaking

22  before Mr. Andersen and I apologize.  I don't recognize

23  his voice on the phone.  But, yes, and -- but, you know,

24  Mr. Verona was stating that, you know, the issue of

25  conversion was not before the Court but yet, on the other

1   hand, he's saying, well, the issue of conversion may very

2   well be resolved and that's exactly the point why I think the

3   Court here needs to be clear that it should not be resolved

4   when it wasn't before the Court to begin with --

5            THE COURT:  Well, to the extent that --

6            MR. CLARK:  -- and that's why we asked for this

7   provision.

8            THE COURT:  Well, to the extent that my remarks

9   suggest that there was a breach of contract claim which,

10  based on permission to use the parts conditioned on a

11  replacement obligation, that negated the ownership argument

12  that Mr. Andersen was making.

13           No, I did not analyze whether it was a breach of

14  contract claim-plus -- where the plus would amount to a

15  separate tort, a conversion claim.  So if you've got breach

16  of contract-plus under the case law, then you go prove that

17  and battle it out with the insurance company.

18           Is there a definition of conversion in the policy

19  that anybody can share with me?  Certainly those things are

20  construed narrowly against the insurance companies.  So to

21  the extent that there's a more expansive way of getting to

22  conversion, then there is.

23           MR. VERONA:  So the only issue then is:  Are we

24  going to have an order -- we need to have an order entered

25  and the only difference between these two orders, Your Honor,

1    is one expressly says, "I'm not ruling on conversion."  The

2    other one just relies on what you said in the transcript.

3    And --

4              THE COURT:  Where is the verbiage?

5              MR. VERONA:  And that's -- 9 is the paragraph that

6    is added and I think that goes beyond what you said.

7              MR. CLARK:  Well, I respectfully disagree.  I think

8    that's exactly what the Court just said.

9              THE COURT:  Well, conversion means that Avantair

10   converted to its own property of another.  That was not my

11   finding.

12             My finding was that they were permitted to move

13   around these parts.  They were given carte blanche within

14   certain parameters, meaning they had to replace it.  If they

15   took it off and put it on another plane, then the plane they

16   took it off from needed to have a part replaced at some point

17   in the future.

18             If that wasn't done, that gives rise to a claim for

19   money, not a claim of ownership of the part that was moved.

20   That was the sum essence boiled down to as briefly as I can

21   about why I picked the musical-chairs version.

22             So in the context of ownership, that's what I was

23   talking about when I talk about conversion.  The fractional

24   owners retained no ownership interest in the part that was

25   moved.

1      MR. VERONA:  And what you're saying today is clear

2  and what you said, in my view on December 22nd, was clear.

3  Paragraph 9 of this order, in my view, attempts to expand

4  upon what you've said by making a specific determination that

5  you're not getting into conversion.  You may or may not be,

6  depending on the consequences of what you did rule.

7      THE COURT:  I don't even understand 9 because the

8  second sentence seems to maybe contradict the first one.

9  While the Court concludes --

10      MR. CLARK:  That's the breach of contract

11  reference, Your Honor, which refers to what the Court stated;

12  that the Court has found that the Debtor breached the program

13  documents but the remedy for that breach would be to file the

14  proofs of claim.

15      MR. VERONA:  Well, it --

16      THE COURT:  Well, yes.  I don't know how I can make

17  it any more clear.  I reject the conversion line of thinking

18  when it comes to ownership rights and title.  That's what I

19  was saying in my earlier ruling.  The owner said, "Feel free

20  to take the cup holder off my plane and put it in another

21  plane.  Just remember to buy me a replacement part."  And

22  they didn't.

23      MR. VERONA:  Right.  And so, if that is conversion,

24  it's conversion.  If it's not, it's not.  But you don't need

25  to state in this order, "I'm not making any determinations."

38

1    You made some determinations and they may or may not have

2    impact on a later insurance claim relating to conversion.

3              But this paragraph 9 is almost inviting fractional

4    owners -- it's telling them the remedy is to file their proof

5    of claims.  It's almost inviting fractional owners to file

6    proofs of claim for conversion or file proofs of claim

7    instead of filing insurance claims.

8              And I respect what Mr. Clark is doing; he's got a

9    client to represent.  But that's not what we -- you know,

10   what was determined here.

11             They can file proofs of claim and they can

12   determine what their causes of action are.  They can file

13   insurance claims if they think they have --

14             THE COURT:  Okay.  Just get this page typed up;

15   okay?  I'm not meaning to affect or interpret any policy of

16   insurance and the use of the word "conversion" in that sense.

17   There are cases out there that say breach of contract-plus

18   can give rise to a conversion claim.  And that's as far as

19   I'm going to go.

20             The conversion I was speaking of is to cut off the

21   argument that suggested that the parts that were moved were

22   still owned by the original group where the part was original

23   plane -- that the part that was moved belonged to the

24   original plane and therefore the fractional interest holders

25   of the original plane still held title.  That's as far as I

1   was going.

2          MR. VERONA:  And what we submitted is consistent

3   with what you ruled on December 22nd --

4          THE COURT:  Okay.

5          MR. VERONA:  -- and what --

6          THE COURT:  I'm going to not sign this one,

7   Mr. Appleby.  I think that the people are trying to mix

8   concepts and I don't want to do that.  The purpose that I

9   made the ruling for is clear on the written record -- I mean

10  the transcript.  It's very clear.  And, today, I hope I

11  clarified that.

12         I wasn't meaning to eliminate the breach of

13  contract-plus type of conversion claim except to the extent

14  it deals with who owns the part.  The last plane that it's

15  on, that's where it belongs.  That was the upshot of my

16  ruling --

17         MR. VERONA:  We understood that.

18         THE COURT:  -- not the first plane where it came

19  from.

20         MR. VERONA:  Okay.  So, are you going to sign our

21  form of order?

22         THE COURT:  Yes.

23         MR. VERONA:  Thank you.

24         THE COURT:  And I'm going to sign the one that

25  Ms. DiIorio gave me about the logbooks but add that sentence

40

1    that allows everyone -- that parties of interest still retain

2    the right to request and pay for copies consistent with the

3    Court's other order.

4              And I think that's all we have to deal with today;

5    right?  So now everyone can enjoy their weekend.

6              MR. VERONA:  Thank you.

7              MALE VOICE:  Happy Gasparilla, Judge.

8              MR. CLARK:  Thank you, Your Honor.

9              THE COURT:  Thank you.

10             MR. ANDERSEN:  Thank you.

11         (The hearing was concluded at 4:39 p.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

41

C E R T I F I C A T E

        I certify that the foregoing is a correct
transcript prepared to the best of my ability from the
digitally recorded audio proceedings and logs of the
above-entitled matter.


_____        January 28, 2014
Transcriber                    Date



FEDERALLY CERTIFIED TRANSCRIPT
AUTHENTICATED BY:


_____
Kimberley S. Johnson, CVR-M
Certified Verbatim Reporter Master

JOHNSON TRANSCRIPTION SERVICE
7702 Lake Cypress Drive
Odessa, Florida  33556
(813) 920-1466

42