[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

---

No. 15-10303

---

D.C. Docket Nos. 8:14-cv-01742-JSM; 8:13-bk-09719-CPM

In Re: AVANTAIR, INC.,
f.k.a. Ardent Acquisition Corp.,

Debtor.

---

CORRECTIONS CORPORATION OF AMERICA,
d.b.a. CCA of Tennessee, Inc.,

Plaintiff - Appellant,

versus

BETH ANN SCHARRER,
as Chapter 7 for the Bankruptcy Estate of Avantair, Inc.,
THE N169SL FRACTIONAL OWNERS,

Defendants - Appellees.

---

Appeal from the United States District Court
for the Middle District of Florida

---

(February 3, 2016)

Before TJOFLAT and ROSENBAUM, Circuit Judges, and RESTANI,[*] Judge.

PER CURIAM:

Is my airplane still my airplane when all of its parts have been removed? Or, as better characterized under the facts of this case, is your airplane now my airplane after my airplane's parts have been installed on yours? Appellant Corrections Corporation of America ("CCA") invites us to resolve this variation on the Paradox of Theseus's Ship by answering a resounding "yes" to the latter question and, in doing so, to vacate the sales approach adopted by the Bankruptcy Court in this case in favor of an approach that would recognize ownership interests of every aircraft owner in one another's planes. We decline CCA's invitation to drift into this philosophical turbulence, though, and affirm the well-grounded rulings of the Bankruptcy Court.[1]

This case arises out of the involuntary bankruptcy proceedings of Avantair, Inc., a company that ran a fractional-owner aircraft operation under Subpart K of Part 91 of the Federal Aviation Regulations, 14 C.F.R. §§ 91.1001 – 91.443. To participate in Avantair's program, CCA and others purchased at least one-sixteenth shares in specific airplanes via a Purchase Agreement. Then, through a

[*] Honorable Jane A. Restani, Judge for the United States Court of International Trade, sitting by designation.

[1] The N169SL Appellees filed a motion to dismiss the appeal, arguing that CCA was not a "person aggrieved" by the Bankruptcy Court's order. Because CCA's ultimate financial position remains speculative at this point, we find CCA sufficiently aggrieved to pursue this appeal and deny the Appellees' motion. *See Atkinson v. Ernie Haire Ford, Inc.* (*In re Ernie Haire Ford, Inc.*), 764 F.3d 1321, 1325 (11th Cir. 2014).

"Management and Dry Lease Agreement," the owners leased their interests in the planes back to Avantair, who was responsible for scheduling flights at the owners' request and maintaining the planes in an airworthy condition. The interpretation of the program documents is the crux of this appeal.

When Avantair began experiencing financial troubles, the quality of its maintenance operations took a nose dive. To keep as many planes as possible flying, Avantair cannibalized parts from other planes in the fleet, effectively grounding the donor planes. In addition, Avantair failed to keep adequate safety records of the part transfers. When the Federal Aviation Administration caught wind of Avantair's activities, it grounded Avantair's fleet, forcing the company to cease operations and eventually enter bankruptcy.

To prevent loss or theft of the planes and to maximize their value to the estate, the Bankruptcy Trustee, in cooperation with some of the fractional owners, developed a plan to sell the aircraft. The sales proceeds would first be distributed to various categories of creditors, and any funds left over would then be distributed to the shareholders of the particular plane sold.

CCA objected to distributing the proceeds from the sale of a specific plane to just that plane's shareholders. First, CCA argued that fractional-share participants did not actually buy ownership interests in any plane but rather just purchased flight time. And even if the shareholders owned their planes, CCA

asserted, Avantair's pervasive parts-swapping practice essentially gave each participant an ownership interest in every other plane in the program. Accordingly, CCA demanded a "pooling" approach to the distribution of sales proceeds—proceeds would be held until every plane was sold, and then the entire fund would be distributed among the owners. To do otherwise, in CCA's view, would unjustly enrich the owners of the maintained and airworthy planes at the expense of the owners of the donor planes whose parts were used to maintain them. The Bankruptcy Court overruled CCA's objections, and the District Court affirmed that determination.

We review the Bankruptcy Court's findings of law *de novo* and its findings of fact for clear error. *Piazza v. Nueterra Healthcare Physical Therapy, LLC* (*In re Piazza*), 719 F.3d 1253, 1260 (11th Cir. 2013). The Bankruptcy Court's construction of contract language is a legal determination that we review *de novo*. *Equitable Life Assurance Soc'y v. Sublett* (*In re Sublett*), 895 F.2d 1381, 1383–84 (11th Cir. 1990).

In overruling CCA's objections, the Bankruptcy Court concluded that the program documents unambiguously designed a fractional-ownership program, with each shareholder necessarily owning a share of a specific plane. The Bankruptcy Court further found that the program documents executed by the participant-owners authorized Avantair to swap parts between planes to maximize the

efficiency of the program. To the extent that Avantair failed to replace parts or maintain the donor planes, the Bankruptcy Court determined that the owners of such planes have a claim against Avantair (or the estate) for breaching its obligations to replace parts or maintain the donor planes but that the authorized swapping of parts did not and could not commingle the participants' ownership interests. With the benefit of the parties' arguments and after a *de novo* review of the record, we discern no error in the Bankruptcy Court's reasoning or rulings and affirm the order of the District Court affirming the order of the Bankruptcy Court.

**AFFIRMED.**

**UNITED STATES COURT OF APPEALS**
**FOR THE ELEVENTH CIRCUIT**

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

Amy C. Nerenberg
Acting Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

February 03, 2016

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 15-10303-EE
Case Style: Corrections Corporation of Ame v. Beth Scharrer, et al
District Court Docket No: 8:14-cv-01742-JSM
Secondary Case Number: 8:13-bk-09719-CPM

**This Court requires all counsel to file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause.** Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the CRIMINAL JUSTICE ACT must file a CJA voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for a writ of certiorari (whichever is later).

Pursuant to Fed.R.App.P. 39, costs taxed against appellant.

The Bill of Costs form is available on the internet at www.ca11.uscourts.gov

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Sandra Brasselmon, EE at (404) 335-6181.

Sincerely,

AMY C. NERENBERG, Acting Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs